134 Nev., Advance Opinion 58

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| SFR INVESTMENTS POOL 1, LLC; AND STAR HILL HOMEOWNERS ASSOCIATION, Appellants, vs. THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-6, Respondent. | No. 72931 **FILED** AUG 0 2 2018 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Certified question, pursuant to NRAP 5, in a quiet title action.

*Question answered.*

Alverson Taylor Mortensen & Sanders and Kurt R. Bonds and Adam R. Knecht, Las Vegas,
for Appellant Star Hill Homeowners Association.

Kim Gilbert Ebron and Howard Kim, Diana Cline Ebron, and Jacqueline A. Gilbert, Las Vegas,
for Appellant SFR Investments Pool 1, LLC.

Akerman LLP and Ariel E. Stern, Las Vegas,
for Respondent.

Legislative Counsel Bureau Legal Division and Brenda J. Erdoes, Legislative Counsel, and Kevin C. Powers, Chief Litigation Counsel, Carson City,
for Amicus Curiae Nevada Legislature.

18-29635

BEFORE THE COURT EN BANC.

## OPINION

By the Court, CHERRY, J.:

This case comes before us as a certified question from the United States District Court for the District of Nevada, seeking an answer to "[w]hether NRS § 116.31168(1)'s incorporation of NRS § 107.090 required a homeowner's association to provide notices of default and/or sale to persons or entities holding a subordinate interest even when such persons or entities did not request notice, prior to the amendment that took effect on October 1, 2015." NRS 107.090, which governs trustee sales under a deed of trust, mandates notice to those holding subordinate interests. We conclude that, by requiring application of NRS 107.090 during the homeowners' association foreclosure process, NRS 116.31168(1)[1] required notice to be provided to all holders of subordinate security interests prior to a homeowners' association foreclosure sale and thus answer the question in the affirmative.

## FACTS AND PROCEDURAL HISTORY

In 2010, former homeowners became delinquent on their homeowners' association dues, and appellant Star Hill Homeowners Association recorded a notice of delinquent assessments, notice of default, and election to sell in 2010. Star Hill recorded notices of sale in 2011 and 2012. On September 14, 2012, Star Hill held the nonjudicial foreclosure sale pursuant to NRS Chapter 116. It recorded a foreclosure deed

---

[1]Although the relevant provisions of NRS Chapter 116 were amended in 2015, unless otherwise indicated, this opinion addresses and refers to the versions of NRS 116.31163, NRS 116.311635, and NRS 116.31168 in effect from 2010-2012, which apply to the underlying case.

 

transferring the property to the purchaser, SBW Investment, Inc. The deed recitals stated that Star Hill had complied with all statutory notice requirements in conducting the sale. On April 15, 2013, SBW transferred title of the property to appellant SFR Investments Pool 1, LLC.

Respondent Bank of New York Mellon (BNYM) subsequently filed a complaint in the federal district court of Nevada, naming SFR and Star Hill as defendants and requesting a declaration that the foreclosure sale did not extinguish its deed of trust. BNYM alleged that the sale was void as violating due process because NRS Chapter 116 "lacks any pre-deprivation notice requirements." SFR answered the complaint and asserted a counterclaim, seeking the opposite declaration and to quiet title, alleging that BNYM was provided with the notice of default and sale. The federal district court then filed in this court its order certifying the question of law stated above.

## DISCUSSION

*NRAP 5 permits us to answer the certified question*

Preliminarily, we address BNYM's argument that we should not answer the certified question. Existing Nevada precedent does not fully resolve this legal question, and our answer may determine part of the underlying federal case. Thus, answering the question is appropriate. *See SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, Docket No. 72931 (Order Accepting Certified Question, Directing Briefing and Directing Submission of Filing Fee, June 13, 2017) (citing NRAP 5(a) and *Volvo Cars of N. Am., Inc. v. Ricci*, 122 Nev. 746, 750-51, 137 P.3d 1161, 1163-64 (2006)). Although BNYM contends that *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), resolved the question, the Ninth Circuit's interpretation of NRS 116.31168 does not stand in the way of our

reaching the merits of the certified question.[2] *See Owen v. United States,* 713 F.2d 1461, 1464 (9th Cir. 1983) (providing that a federal court's construction of a state statute is only binding in the continued absence of a contrary construction by that state's highest court); *see also Cal. Teachers Ass'n v. State Bd. of Educ.,* 271 F.3d 1141, 1146 (9th Cir. 2001) (stating that state courts are the judicial body capable of authoritatively construing state statutes). Accordingly, we decline BNYM's invitation to reject the question.

*NRS 116.31168 required homeowners' associations to provide notice to all holders of subordinate interests in the event of foreclosure*

SFR argues that this court recognized in *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.,* 130 Nev. 742, 334 P.3d 408 (2014), that NRS 116.31168(1) mandated homeowners' associations to mail notices of default and sale to first security interest holders through incorporation of NRS 107.090.[3] SFR contends that, regardless, banks such as BNYM have continued to argue in federal district court that they have been deprived of due process because notice is not required under NRS Chapter 116. SFR points out that, in so doing, banks rely on *Bourne Valley,* which stated that

---

[2]BNYM argues that, even if this court concludes that NRS 116.31168 mandated notice to first deed of trust holders who had not opted-in by requesting such notice in advance, the Ninth Circuit would still find the required notice to fall short of the requirements of due process unless the homeowners' association were required to provide notice of the amount of the lien that was granted superpriority status. In *Bourne Valley,* however, the Ninth Circuit based its due process conclusion on its contrary interpretation of NRS 116.31168's notice requirement. Thus, to the extent that BNYM contends that answering the certified question constitutes a circumvention of the certiorari petition process, we reject the argument.

[3]Star Hill joined in SFR's briefing.

the incorporation of NRS 107.090 would "render the express notice provisions of NRS Chapter 116 entirely superfluous," and that NRS 116.31168 could not be read to require notice outside of its opt-in scheme. *See Bourne Valley*, 832 F.3d at 1159. SFR asserts that *Bourne Valley* was wrongly decided and notes that this court has since reaffirmed in unpublished orders the incorporation of NRS 107.090.

BNYM argues that NRS Chapter 116 merely required that notice be given to lienholders who had requested such notice from the HOA, as evidenced by the chapter's continual reference to requests for notice. *See* NRS 116.31163(2). It seeks to invalidate Star Hill's foreclosure on the basis that NRS Chapter 116 required notice only to parties that had opted-in to NRS Chapter 116's notice provisions and was thus held to violate due process by the Ninth Circuit in *Bourne Valley*. We disagree with this interpretation of NRS 116.31168.

If a statute is unambiguous, this court interprets the statute according to its plain language. *Williams v. United Parcel Servs.*, 129 Nev. 386, 391-92, 302 P.3d 1144, 1147 (2013). We look beyond plain language if a statute is ambiguous or silent on the issue in question, and we read statutes within a common statutory scheme harmoniously with one another whenever possible. *Allstate Ins. Co. v. Fackett*, 125 Nev. 132, 138, 206 P.3d 572, 576 (2009). Where a statute's language lends itself to conflicting interpretations, with one being constitutional and the other being unconstitutional, this court will choose the constitutional interpretation. *Sheriff, Washoe Cty. v. Wu*, 101 Nev. 687, 689-90, 708 P.2d 305, 306 (1985).

NRS 116.3116 to NRS 116.3117 governs homeowners' association liens and the procedures for foreclosing on them. NRS 116.31163 required homeowners' associations foreclosing on such liens to

SUPREME COURT
OF
NEVADA

(O) 1947A

provide notice to each person who requested it pursuant to NRS 116.31168 or NRS 107.090. NRS 116.31168(1), governing "Foreclosure of liens: Requests by interested persons for notice of default and election to sell," stated "[t]he provisions of NRS 107.090 apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed. The request must identify the lien by stating the names of the unit's owner and the common-interest community." The statute did not, however, indicate whether it incorporated all or some of NRS 107.090's provisions.

NRS 107.090(1) defines a "person with an interest" as "any person who has or claims any right, title or interest in, or lien or charge upon, the real property described in the deed of trust, as evidenced by any document or instrument recorded in the office of the county recorder." NRS 107.090(2) allows "[a] person with an interest or any other person who is or may be held liable for any debt secured by a lien on the property desiring a copy of a notice of default or . . . sale under a deed of trust with power of sale upon real property" to request a copy of the notices by filing such a request in the office of county recorder where the subject property is located. NRS 107.090(3) requires, in the event of the recording of a notice of default on the property, that notice be provided to "[e]ach person who recorded a request for a copy" pursuant to NRS 107.090(2) and "[e]ach person with an interest whose interest or claimed interest is subordinate to the deed of trust." NRS 107.090(4) requires the trustee or person authorized to make the sale to mail the notice of sale to all persons entitled to notice under NRS 107.090(3).

NRS 116.31168's incorporation of NRS 107.090 was previously before the Ninth Circuit in *Bourne Valley*, 832 F.3d 1154. The Ninth Circuit was similarly evaluating a quiet title action following nonjudicial

SUPREME COURT
OF
NEVADA

(O) 1947A

foreclosure by a homeowners' association under NRS Chapter 116. *Id.* at 1156-57. *Bourne Valley* recognized that while a deed of trust ordinarily has priority over homeowners' association liens, NRS 116.3116(2) gave homeowners' association liens superpriority, making a portion of the homeowners' association lien senior to a deed of trust, *id.* at 1157 (citing *SFR Invs. Pool 1*, 130 Nev. at 744-50, 334 P.3d at 410-14), and as a result, foreclosure on a homeowners' association lien extinguished the mortgage lender's first deed of trust. *Id.*

It further interpreted NRS 116.31163(2) as requiring a mortgage lender to "opt-in" to receive notice in the event of foreclosure by a homeowners' association, despite NRS 116.31168's incorporation of NRS 107.090. *Id.* at 1157-59. The court reasoned that if NRS 107.090's notice requirements were fully incorporated into NRS 116.31168, mandating that notice be given to "mortgage lenders whose rights are subordinate to a homeowners' association super priority lien," the "express notice provisions of Chapter 116" would be rendered "superfluous." *Id.* at 1159. In doing so, the *Bourne Valley* court concluded that such an opt-in notice scheme violated due process because it placed the burden of learning about the foreclosure action on the mortgage lender. 832 F.3d at 1158-60.

However, NRS 116.31168 incorporated the notice requirements of NRS 107.090 and consequently required that notice be provided to all persons whose interests were subordinate to a homeowners' association superpriority lien, which is "'prior to' a first deed of trust." *See* *SFR Invs. Pool 1*, 130 Nev. at 745, 334 P.3d at 411 (explaining the HOA lien has priority over the first security interest in the amount of "unpaid [ ] dues and maintenance and nuisance-abatement charges"). In stating that "[t]he provisions of NRS 107.090 apply to the foreclosure of an association's lien

 

as if a deed of trust were being foreclosed," without any accompanying language to limit the incorporation, NRS 116.31168(1) manifested intent to have all notice provisions apply and that the parties requiring notice would be the same as those that would require notice in foreclosing on a deed of trust. Replacing the deed of trust with the homeowners' association superpriority lien within the language of NRS 107.090 then requires that the homeowners' association provide notice to the holder of the first security interest as a subordinate interest.

Furthermore, the complete incorporation of NRS 107.090 does not render NRS 116.31168's opt-in notice provisions superfluous. The parties required to receive notice as recorded holders of subordinate interests and those who may request notice are not coextensive, as not every party who may request notice is entitled to notice under due process. *See* 1 Grant S. Nelson et al., *Real Estate Finance Law* § 7.25 (6th ed. 2014) (providing that while parties whose interest in a property is reasonably ascertainable must receive notice, a request-notice statute "protects the due process rights of those parties whose interests and addresses are not 'reasonably ascertainable'"). This fact is similarly reflected in NRS 107.090(3) itself, which creates the distinction between parties entitled to notice and parties that must request it. Consequently, incorporation of NRS 107.090's mandatory notice requirements does not offend the express provisions of NRS 116.31168.

Yet finding that NRS 116.31168 merely incorporated NRS 107.090's opt-in provisions would itself pose a redundancy. At the time, NRS 116.31163(1) stated that it required notice to all parties who requested it under NRS 107.090 or NRS 116.31168. Because NRS 116.31163(1) already incorporated NRS 107.090's notice provisions for parties requesting

SUPREME COURT
OF
NEVADA

(O) 1947A

8

it, NRS 116.31168's incorporation of NRS 107.090 exclusively for its opt-in provision would have been unnecessary. *See Harris Assocs. v. Clark Cty. Sch. Dist.*, 119 Nev. 638, 642, 81 P.3d 532, 534 (2003) (holding that statutes are construed in a way that "give[s] meaning to all of their parts and language . . . within the context of the purpose of the legislation" (internal quotation marks omitted)).

Finally, NRS 116.31168's use of "request[s]" for notice in both its title and first subsection does not limit its incorporation of NRS 107.090's notice requirement to its opt-in provision. Though NRS 116.31168 was titled "Foreclosure of liens: Requests by interested persons for notice of default and election to sell," it had a similar title, "Requests for notice of default and sale," prior to its 1993 amendment when it explicitly required the homeowners' association to provide notice to all known lienholders, regardless of whether they had requested notice. NRS 116.31168 (1991). Therefore, the fact that the statute's title referred to requests for notice did not contradict its mandatory notice requirements in the eyes of the Legislature, and we will not presume that the title does more now.[4]

---

[4]We also note that the removal of NRS 116.31168's requirement to provide notice to all known lienholders in addition to its incorporation of NRS 107.090, 1993 Nev. Stat., ch. 573, § 40, at 2373, followed the amendment of NRS 107.090, requiring notice to all junior lienholders and others in deed-of-trust foreclosure sales rather than only those requesting it, 1989 Nev. Stat., ch. 306, § 1, at 644. The removal of the additional notice requirement from NRS 116.31168, therefore, eliminated the redundancy of both incorporating NRS 107.090 and requiring notice to all known lienholders and further supports the conclusion that the incorporation of NRS 107.090 includes its requirement to provide notice to all with recorded subordinate interests.

Similarly, though the second sentence of NRS 116.31168(1) identified "the request," it can plainly be read as adapting the opt-in notice provision of NRS 107.090(2) to the context of a homeowners' association foreclosure, instead of precluding notice requirements outside of parties who had requested it.

For the aforementioned reasons, we decline to follow the majority holding in *Bourne Valley*, 832 F.3d at 1159. NRS 116.31168 fully incorporated both the opt-in and mandatory notice provisions of NRS 107.090 and, to the extent NRS Chapter 116 was ambiguous in this regard, legislative history and the principles of statutory construction support this conclusion.[5]

---

[5]BNYM also requests that, if we determine that NRS 116.31168 required notice to secured lenders that had not opted in, we also determine that NRS 116.31168 incorporated the formal notice requirements found in NRS 107.090. While this court may rephrase certified questions, *Progressive Gulf Ins. Co. v. Faehnrich*, 130 Nev. 167, 170-71, 327 P.3d 1061, 1063 (2014), the scope of our answer must still be limited to that which may be determinative of the underlying case, *Volvo*, 122 Nev. at 750-51, 137 P.3d at 1164. Similarly, we do not make factual findings outside of those presented by the certifying court in answering the question. *In re Fontainebleau Las Vegas Holdings*, 127 Nev. 941, 956, 267 P.3d 786, 795 (2011). Here, the certifying court made no findings as to whether any notice occurred. Whether the formal requirements of notice will be at issue going forward is entirely speculative, and we have no basis on which to conclude that expanding our answer to reach that issue may be determinative. We, therefore, decline to address that question here.

 

## CONCLUSION

We answer the certified question in the affirmative, concluding that even before the October 1, 2015, amendment to NRS 116.31168, the statute incorporated NRS 107.090's requirement to provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice.

_____, J.
Cherry

We concur:

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

